In the Matter of the Claim of JOSEPH N. MALLIA, Claimant. EDWARD CORSI, as Industrial Commissioner, Appellant; P. S. THORSEN & Co., INC., Respondent.

Third Department, March 24, 1948.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General,* and *Francis R. Curran, Assistant Attorney-General* of counsel), for appellant.

*Uniacke & Kelley,* attorneys for respondent.

RUSSELL, J. This is an appeal by the Industrial Commissioner from a decision of the Unemployment Insurance Appeal Board dated January 20, 1947, reversing the decision of an Unemployment Insurance Referee holding that claimant is entitled to be credited with his earnings received from employment within the State of New Jersey as well as within the State of New York, during his " base year " 1944, as a basis for unemployment insurance benefits.

The issue on this appeal is whether claimant is entitled to be credited with his earnings received from employment within the State of New Jersey as well as within the State of New York during 1944, for the purpose of determining the amount of his weekly benefit rate under the Unemployment Insurance Law.

The employer in this case is a domestic corporation with its principal office for the transaction of business in Brooklyn, New York, and is licensed to do business in the State of New Jersey. Its business consists mainly in rendering engineering and constructive service on ships designed for oceanic and coastal waters including navy, passenger and freight vessels, tugs and ferry boats. Its service consists of applying specified type of insulation to boilers, hot and cold pipes, and other equipment requiring such treatment. Such service is performed while the vessel is in a state of rest, afloat, or in a floating drydock in navigable waters of the States of New York and New Jersey, or in a drydock adjacent to such navigable waters.

The employer's physical installations consist of an executive office and warehouse at 81 Coffey Street, Brooklyn. In addition thereto the employer leases, under arrangements, superintendents' offices and stockrooms at Kearney, Port Newark and Hoboken, New Jersey. Operations of each plant in New Jersey is in charge of a superintendent. The Federal Shipbuilding and Drydock Corporation supplies the office facilities at Kearney, New Jersey, and Port Newark, New Jersey. Each of the three New Jersey superintendents is in complete charge of work performed in his immediate location with power to hire and discharge personnel and also has power to requisition supplies.

At Kearney and Port Newark, New Jersey, all employees daily report at the office of the employer in that area, punch a time clock and ring out at the end of each day's work. At Hoboken, New Jersey, all employees report directly to the ship where the work is being done.

Contracts for the application of insulation and negotiations of union contracts with the " productive labor force " were entered into on behalf of the employer in New York by the executive group. The " productive labor force " performs the physical operations of applying the insulating material. Claimant was a member of the " productive labor force " and was hired on January 28, 1943, by the New York superintendent " as a pipe coverer's helper " and then advanced to the grade of " pipe coverer."

On November 20, 1945, the claimant, who at all times herein was a resident of New York State, filed an application for benefits under article 18 of the Labor Law with the New York State Department of Labor. His base year as stated above was 1944. For the first quarter of 1944, the claimant's earnings were $355 in the State of New Jersey and $318.13 in the State of New York.

During the second quarter he was absent from employment because of his services in the armed forces. His earnings for the third quarter were $235.01 for services in the State of New York and for the fourth quarter $393.13 for services in the State of New York. However, it does appear in the record that for the whole period of claimant's employment down to and including the first quarter of 1944 he was paid for services in the State of New Jersey, $2,050.02 and for services in the State of New York, $1,775,63.

The employer-respondent reported the sum of $355, amount earned in the first quarter of the base year of 1944, to the Unemployment Compensation Commission of New Jersey. His action was in conformity with an administrative interpretation rendered on July 10, 1940, by the Assistant Executive Director of the Division of Placement and Unemployment Insurance. In accordance with this interpretation the employer-respondent was allowed a refund of $11,483.09 for unemployment insurance contributions theretofore made to the State of New York with respect to wages earned on work in the State of New Jersey.

For the period from January, 1943, to March, 1944, 80% of the employer-respondent's total payroll was for work done in the State of New Jersey and 20% for work done in the State of New York ($1,647,000 expended in the State of New Jersey and $421,000 in the State of New York). During this same period the percentage of sales of the employer-respondent in New Jersey and New York was the same as the payroll percentages, and during the same period 61% of the employer-respondent's productive labor personnel were used interchangeably in New Jersey and New York, 26% of which was used exclusively in New Jersey and 13% exclusively in New York. The place of work is determined by the availability of work and seniority.

Section 511 of the Labor Law applies to the issue on this appeal and reads as follows:

" *Employment.* 1. General definition. ' Employment ' means any service under any contract of employment for hire, express or implied, written, or oral.

" 2. Work localized in state. The term ' employment ' includes a person's entire service performed within or both within and without this state if the service is localized in this state. Service is deemed localized within the state if it is performed entrely within the state or is performed both within and without the state but that performed without the state is incidental to the person's service within the state, for example, is temporary or transitory in nature or consists of isolated transactions.

" 3. Work within and without the state. The term ' employment ' includes a person's entire service performed both within and without this state provided it is not localized in any state but some of the service is performed in this state, and

" (a) the person's base of operations is in this state; or

" (b) if there is no base of operations in any state in which some part of the service is performed, the place from which such service is directed or controlled is in this state; or

" (c) if the base of operations or place from which such service is directed or controlled is not in any state in which some part of the service is performed, the person's residence is in this state. * * * "

Upon the facts and statute as stated above the Appeal Board in its opinion held that the " Claimant's services within the State of New Jersey in nature and volume were so substantial that they may not be deemed incidental to his employment within the State of New York. His services, therefor, were not localized in this state."

It further held that upon the evidence produced " that the base of operations with respect to the claimant's services in the State of New Jersey was in that state." It would, therefore, naturally follow that the board held that this claimant had different bases of operations, namely: one in New York for the services performed in New York and one in New Jersey for the services performed in the State of New Jersey. Such holding upon the part of the board is inconsistent with the meaning of the statute. Section 511 refers to a single base of operations with respect to the entire services performed within and without the State. The danger in holding that there were two bases of operations might lead to the result where New York with its base of operations could claim the entire service of an employee both in New York and New Jersey, and New Jersey could claim coverage of an employee's entire service both within the State of New Jersey and that performed in the State of New York. Such a construction would lead to double coverage and double taxation. Two bases of operations, each of which is in a different State, would not permit coverage of multiple State employment under the Unemployment Insurance Law of a single State. Reinforcing this construction is the result of the conclusion reached between the administrators of New York and New Jersey statutes. Such administrators came to the conclusion that the provisions of the statutes of New York and New Jersey meant a single base of operations as to all services performed under a single contract of hire both within and without the State

within a given tax year so that the test might apply favorably to both States.

If his services in New Jersey were not *incidental* to his services performed in New York, then such services in New Jersey were neither temporary nor transitory in nature and were not localized in the State of New York.

The word "incidental" which is found in subdivision 2 of section 511 of the statute and according to the statute means temporary or transitory in nature, or consists of isolated transactions. It was the custom when a man was assigned to a job on a particular ship that he should finish that job before he could be assigned to another and his assignment was subject to seniority provisions of the union contract. There was a distinct difference between employment at the plants in New Jersey and those in New York. At the Kearney, New Jersey, plant there was such a continuous demand for the services of the employer-respondent on new ships that it maintained its own permanent installations on the grounds of the shipbuilder. In New York the employer-respondent was looking for business and estimating jobs as ships came in. The period 1943–1944, was a period of wartime activity which necessitated continuous employment upon the part of the claimant. Duration of service of the employee, the nature and physical facilities of the plant in another State and also the degree of authority vested in the superintendent of said plant are vital factors in determining whether or not the services of the employee are incidental to services performed in the State where the contract of hire was made.

The facts in this case do not warrant one in holding that his service in New Jersey was incidental to his service in New York. It appears that the claimant, while working in New Jersey at times worked as much as sixteen hours a day, six and sometimes seven days a week for twenty-four weeks at the employer's plant in a given area. Such an extent of service and time could not reasonably be called transitory or temporary.

Having eliminated the claimant's services for meeting the test as set forth in subdivision 2 of section 511, and also taking the view that there cannot be two bases of operations within the meaning of the statute, which in effect means that there is no single base of operations, we must now examine subdivision 3 of section 511 to see if claimant's services come within the construction of that subdivision. Subdivision 3, paragraph (b), reads as follows: "if there be no base of operations in any state in which some part of the service is performed, the place from

which such service is directed or controlled is in this state." It is plain that if there is no base of operations then the " place " from which such services are directed or controlled may be considered. The claimant being a member of the productive labor force was hired by the New York superintendent on January 28, 1943. His orders were cleared through the supervisor in Brooklyn. The supreme authority directing or controlling the services of the supervisor in New York, the superintendents in New York and New Jersey, all foremen, and finally the productive labor group, emanated from the Brooklyn executive office. The payroll is prepared at the principal office in Brooklyn from time sheets kept by foremen at each job and said " payroll is thereafter distributed to the employees at their specific job locations."

From the record on appeal it is clear that the claimant's services were directed or controlled from the executive office in Brooklyn, New York, and therefore come within paragraph (b) of subdivision 3 of section 511 of the Labor Law. It is, therefore, unnecessary to consider the resident test.

The harmonizing of legislation of different States, in which is involved the coverage of the services of the same employee under circumstances and conditions similar to the instant case, is essential to the successful operation of the statutes of States. To make such harmony clear and definite is for the legislatures and not for the courts. New York State has approached this solution by an amendment of the Labor Law (L. 1944, ch. 700; Labor Law, § 536, subd. 2, par. [c]) which reads as follows: " the commissioner is authorized to enter into reciprocal agreements with the appropriate agencies of other states in regard to services on vessels engaged in interstate or foreign commerce whereby such services for a single employer, wherever performed, shall be deemed performed within this state or within any such other state." It is unfortunate in this case for the harmony of State legislation that no reciprocal agreement was made.

The decision of the Unemployment Insurance Appeal Board is reversed on the law and facts and remitted for action in accordance with this opinion.

BREWSTER, J. (dissenting). The decision appealed from " adhered " to a prior decision made by a board member, dated October 14, 1946, which held claimant was " * * * not entitled to be credited with his earnings within the State of New Jersey." In the " Opinion " portion of that decision,

preceding that holding and following the part headed, "Findings of Fact," it was stated: "Claimant's services within the State of New Jersey in nature and volume were so substantial that they may not be deemed incidental to his employment within the State of New York. His services, therefor, were not localized in that state." I am unable to regard the matter just quoted other than as a finding of fact. As such it is supported by evidence and, it seems to me, as a matter of law renders the final determination correct.

The finding that claimant's services in New Jersey were so substantial in their nature and volume as to preclude their localization in New York, is, it seems to me, in effect a finding that they were localized in New Jersey. It is without dispute that the work in question was performed entirely within New Jersey, and such is the statutory definition of when the service is "deemed localized." That definition is general. It defines localization of employment not only as to our State but as to any State wherein work is performed. (Labor Law, § 511, subd. 2.) That the board is not bound by technical and formal rules of procedure (Labor Law, § 622, subd. 2), would seem to obviate a requirement that their finding should have been more explicit in order to be so considered. Moreover, there is no finding that the services in question were "not localized in any state," and it is expressly provided that it is only in such a case that the other tests as to what employment is covered by our statute, are to be applied. The fact that the board approved of the use of an additional but inapplicable test, whether or not with a correct result, does not invalidate the final determination.

FOSTER and DEYO, JJ., concur with RUSSELL, J.; BREWSTER, J., dissents in a memorandum in which HILL, P. J., concurs.

Decision of the Unemployment Insurance Appeal Board reversed on the law and facts and remitted for action in accordance with opinion.